**Karen L. MILLER (formerly Karen L. Robinson), Appellant,**

v.

**Harley David ROBINSON, Respondent.**

**No. WD 45416.**

Missouri Court of Appeals, Western District.

Dec. 29, 1992.

Jane A. Harden, Kirksville, for appellant.

Edward L. Campbell, Kirksville, for respondent.

Before KENNEDY, P.J., and SPINDEN and SMART, JJ.

SPINDEN, Judge.

Karen L. Miller and her former husband, Harley Robinson, have been battling in the courts since 1989 for custody of their son. Miller initially obtained custody after the couple's divorce in 1987, but the court transferred custody to Robinson after concluding that Miller had violated its orders concerning Robinson's rights of visitation. Miller appeals the court's denial of her two motions for relief from judgment and its finding her in contempt. We affirm.

Miller and Robinson lived in Kansas when they divorced in 1987. The Kansas court granted custody of their son, Patrick David, to Miller and granted visitation rights to Robinson. A year later, both of them had moved to Missouri, and on August 31, 1988, the Circuit Court of Adair County, pursuant to § 455.085,[1] awarded custody of Patrick to Miller and granted visitation rights to Robinson.

On February 21, 1989, Robinson filed a motion to modify custody in the Circuit Court of Schuyler County under the Uniform Child Custody Jurisdiction Act (UCCJA). He informed the court that Miller intended to move the child from Missouri, and she did move with Patrick in March 1989 to Mississippi. She returned for a hearing on the motion on September 13, 1990. The court took the matter under advisement until October 22, 1990.

On October 22, 1990, the parties appeared before the court, and the court awarded primary custody to Miller and visitation rights to Robinson. In a handwritten docket entry, the court provided for visitation:

> One week in spring to coincide with the child's school vacation. In 1991 it shall be for the week period ending with the Saturday immediately before Easter. Beginning in 1992 the visitation shall coincide with any school vacation and shall not be longer than one week or the child's school vacation.

Between October 22, 1990, and January 18, 1991, Miller's and Robinson's attorneys worked on preparing a formal order for the court to sign. On January 18, 1991, the court signed an order, prepared by both attorneys, granting Miller and Robinson joint custody of Patrick but giving Miller primary physical custody. It granted Robinson "temporary physical custody ... in the spring of each year for the Easter/Springbreak Vacation from school." Contrary to the court's docket entry, the order set the 1991 spring visit "for one (1) full week commencing Saturday, March 30, 1991, and terminating Saturday, April 6, 1991." It ordered each party to keep the other informed about addresses and phone numbers, Patrick's school activities, and Patrick's medical problems. It required Miller to sign documents permitting Robinson to take advantage of a tax dependency exemption for Patrick, and it required her to facilitate Robinson's talking to Patrick once a week by telephone. It also required Miller and Robinson to pay equal shares of Patrick's medical expenses.

On March 20, 1991, Robinson filed a motion for contempt in the Schuyler County Circuit Court. He alleged that Miller had violated the court's order of October 22, 1990, by not allowing him to speak to Patrick weekly by telephone, by not paying half of Patrick's medical expenses, and by not providing him with phone numbers, school records, and the tax exemption. On April 3, 1991, Robinson filed another motion asking the court to abate his obligation to pay child support and to transfer Patrick's custody to him. Robinson asserted that Miller had violated the October 22, 1990, order by not releasing Patrick to him for a visit from March 30 to April 6, 1991. Miller told the court that she refused to let Robinson have temporary custody of Patrick on March 30 because Patrick's preschool class had planned a trip to the zoo for that week, and she hoped Robinson would agree to a different week.

The motions' certificate of service indicated that Robinson's attorney had "forwarded" copies of the motions and notice

1. All statutory references are to the 1986 Missouri Revised Statutes unless otherwise indicated.

of an April 19, 1991, hearing to Miller on April 2, 1991. Miller was served on April 12, 1991, with the first motion for contempt and with a subpoena directing her to appear with Patrick in court on April 19, 1991. She asked for a continuance of the hearing, and the court continued the hearing until April 22, 1991.

On April 22, 1991, Miller appeared before the court. She told the judge that her attorney had withdrawn from the case, and she understood that she had a right to be represented by an attorney. She said, however, that she was ready to proceed without representation of an attorney. After the hearing, the court ruled:

> [Miller] has willfully and deliberately and without good cause failed to provide visitation or temporary custody to [Robinson] pursuant to the previous Order of this Court dated October 22, 1990.
>
> The Court further finds that ... Miller deliberately and intentionally violated the Court Order with respect to providing [Robinson] the tax exemption for the minor child.
>
> [Miller] failed to comply with the Order of October 22, 1990, by failing to have the minor child contact [Robinson] on a weekly basis.
>
> Further, [Miller] wholly failed to comply with the Court Order with regard to providing school records and medical records for the minor child to [Robinson].
>
> The Court further finds that with regard to [Miller's] failure to comply as set out above, [Miller's] actions have been deliberate and spiteful in direct contradiction to this Court's Order.
>
> The Court further finds that [Robinson] is current in all of his support obligations.

Pursuant to § 452.340, RSMo Supp.1991,[2] the court ordered transfer of Patrick's custody to Robinson, and it ordered visitation rights for Miller, including a visit from June 1, 1991, to August 10, 1991.

During Miller's visit with Patrick in 1991, Miller filed a complaint in a Mississippi court requesting the court to take jurisdiction of the custody issue. Robinson was served on August 10, 1991, with the Mississippi pleading when he appeared in Mississippi to pick up Patrick. Miller did not allow Robinson to take Patrick back to Missouri or to see Patrick while Robinson was in Mississippi.

Before the Mississippi court ruled, Robinson filed a motion for contempt in the Schuyler County Circuit Court on August 16, 1991. He alleged that Miller had violated the April 22, 1991, order by failing to return Patrick to him on August 10, 1991. On August 19, 1991, the Mississippi court dismissed Miller's action on the ground that it lacked jurisdiction and that Schuyler County Circuit Court had jurisdiction.

On September 6, 1991, Miller filed a motion for relief from judgment and order in the Schuyler County Circuit Court. She alleged that the court's order of April 22, 1991, was void because no summons had been issued to her; the hearing had taken place less than 30 days from the filing of the motion; she was denied sufficient notice and opportunity to be heard; and the court had no jurisdiction under the UCCJA. The court denied Miller's motion. It ruled that it had jurisdiction and that Miller waived any procedural defects by her appearance and participation in the proceedings on April 22, 1991.

On December 12, 1991, Miller filed a second motion for relief from judgment and order. She averred that the order of April 22, 1991, was void and irregular because it based the transfer of Patrick's custody on Miller's violation of the visitation directives of the October 22, 1990, order. Miller asserted that this was wrong because the court had ordered from the bench on October 22, 1990, that she was to provide visitation to Robinson from March

---

**2.** That statute provides, "A court ... may transfer the custody of one or more children if it finds: (1) [t]hat a custodial parent has, without good cause, failed to provide visitation or temporary custody to the noncustodial parent pursuant to the terms of a decree of dissolution, legal separation or modifications thereof; and (2) [t]hat the noncustodial parent is current in payment of all support obligations pursuant to the terms of a decree of dissolution, legal separation or modifications thereof."

23, 1991, through March 30, 1991, but the court's written order inconsistently set the dates of visitation as from March 30, 1991, through April 6, 1991.

The court denied the second motion on December 20, 1991. The court then considered Robinson's motion to find Miller in contempt of court and found her in contempt for violating the order of April 22, 1991, because she refused to return Patrick to Robinson on August 10, 1991. The court ordered Miller to pay Robinson's attorney's fees and expenses for returning to Mississippi for the Mississippi court hearing, attorney's fees for the contempt hearing, and attorney's fees for the guardian ad litem.

■ Pursuant to Rule 74.06(b),[3] Miller asserts that the court's order of April 22, 1991, was irregular and void.[4] She argues that the visitation order of January 18, 1991, which was intended to memorialize the court's ruling of October 22, 1990, and which she allegedly violated, was a legal nullity and had no force or effect. She admits that she did not allow Robinson to visit Patrick on March 30 to April 6, 1991, as instructed by the order, but she asserts that the October 22 docket entry should control, not the contradictory written order. The court's docket entry indicates that it ordered visitation "for the one week period *ending* with the Saturday immediately before Easter."[5] The Saturday before Easter was March 30, so she argues her denial of visitation between March 30 and April 6 did not violate the court's docket entry. She further argues that the order of January 18, 1991, was a nullity because the court lost jurisdiction 30 days after October 22, 1990. We disagree.

In *Grantham v. Shelter Mutual Ins. Co.,* 721 S.W.2d 242 (Mo.App.1986), the appellant made an argument similar to Miller's. In that case, the trial court entered its judgment from the bench by dictating findings of fact and conclusions of law into the record at the close of the trial. More than 30 days after the trial, the court signed a formal judgment which reduced the amount of recovery stated in the dictated findings on the record. This court stated:

> The Granthams' act in submitting a form for the final judgment shows that they believed the court's dictated findings and conclusions did not constitute the final judgment. Other correspondence submitted to this court indicates both parties and the court contemplated some further action on behalf of the court to make the judgment final. The test of whether a court has pronounced judgment is whether: (1) the court has uttered a pronouncement that it appears to have intended to operate as the determination of the parties' rights, and (2) the pronouncement articulates in intelligible language what those rights are.... Since the actions of the court and both parties in this case show all of them contemplated the entry of a formal, final order after the court dictated findings into the record, the formal order, rather than the dictated findings, constitutes the judgment.

*Id.* at 245.

It is evident from the record that the court, Miller and Robinson contemplated the entry of a formal order and did not intend the court's docket entry on October 22, 1990, to constitute a final judgment. The docket entry stated explicitly, "All as per decree filed." Further, the parties exchanged letters between themselves and the court concerning their intent to file a

---

**3.** That rule provides, "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment or order for the following reasons: ... (3) the judgment is irregular; (4) the judgment is void[.]"

**4.** Robinson counters that we do not have jurisdiction to consider Miller's appeal because her appeal is not timely. He argues that under Rules 81.04 and 81.05 her appeal had to be filed on or before June 3, 1991. We disagree. Rule

74.06(c) provides, "A motion under subdivision (b) does not affect the finality of a judgment or suspend its operation." The trial court had jurisdiction for a reasonable time to consider the motion under Rule 74.06(b). We have jurisdiction to determine whether the court's denials of Miller's motions were an abuse of discretion. *In re Marriage of Clark,* 813 S.W.2d 123 (Mo. App.1991).

**5.** We added the emphasis.

formal order. Miller's attorney, while arguing her first motion for relief from the judgment, acknowledged that the parties had several conferences about the wording of the written order and stated:

> There was a long time prior to the filing of the order with the Court. We had several conferences with the Court about the wording of that order. And finally the order which came out of those three days of hearing and which was verbally ordered in October of 1990, was filed with the Court[.]

Further, Miller's intent to negotiate a different date for visitation with Robinson, rather than challenging the dates as mistaken or contradictory of the court's original pronouncement, evidences her acceptance of the dates noted in the written decree. We conclude, therefore, that the court had jurisdiction to enter its order on January 18, 1991, and this order, not the docket entry of October 22, 1990, constituted the court's final judgment.

Next, Miller argues that because no summons ever issued on the motion to transfer custody and because she did not have 30 days to answer before the hearing, the court did not have jurisdiction to enter its order of April 22, 1991, giving custody of Patrick to Robinson. She contends that for the court to have jurisdiction to modify custody, a new action must be filed in conformity with the UCCJA. Section 452.-455, RSMo 1986, of the UCCJA provides:

> 1. Any petition for modification of child custody decrees filed under the provisions of section 452.410, or sections 452.440 to 452.450, shall be verified and, if the original proceeding originated in the state of Missouri, shall be filed in that original case, but service shall be obtained and responsive pleadings may be filed as in any original proceeding.
>
> 2. Before making a decree under the provisions of section 452.410, or sections 452.440 to 452.450, the litigants, any parent whose parental rights have not been previously terminated, and any person

who has physical custody of the child must be served in the manner provided by the rules of civil procedure and applicable court rules and may within thirty days after the date of service (forty-five days if service by publication) file a verified answer. If any of these persons is outside this state, notice and opportunity to be heard shall be given pursuant to section 452.460.

Miller relies on *In re Cook*, 691 S.W.2d 243 (Mo. banc 1985), in support of her argument. The *Cook* court noted that § 452.455.2 grants a party at least 30 days to plead before a hearing can be held. The *Cook* court voided an order to modify because the petitioner did not receive 30 days. *Id.* at 244–45. Unlike Miller, however, the petitioner in *Cook* did not appear at the hearing, presented no evidence, and received no notice of the hearing.

Although a parent's voluntary appearance in a child custody case does not grant the court jurisdiction of the subject matter, *State ex rel. Laws v. Higgins*, 734 S.W.2d 274, 279 (Mo.App.1987), it does establish the court's jurisdiction over the parent. *See In re B.R.F.*, 669 S.W.2d 240, 248 (Mo.App.1984). Miller received notice that the motion for contempt and motion for transfer of custody would be heard on April 19, 1991. She appeared in person on April 22, 1991, advised the court she desired to proceed, and participated in the hearing.

Miller did not object to the court's exercise of jurisdiction over her.[6] She did not raise lack of compliance with § 452.455 as an issue. We conclude that Miller waived any objections to procedural matters and that the court properly exercised jurisdiction over her.

Next, Miller alleges that the court lacked subject matter jurisdiction to enter the order of April 22, 1991, because § 452.410 provides, "The court shall not modify a prior custody decree unless it has jurisdic-

**6.** Although a major portion of the transcript for the April 22, 1991, hearing was obliterated due to a clerical error and through no fault of Miller, Miller's acknowledgement to the court that she was ready to proceed and her participation in the hearing indicates that she did not object to the court's taking jurisdiction.

tion under the provisions of section 452.-450[.]" Section 452.450 states:

1. A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

\* \* \* \* \* \*

(2) It is in the best interest of the child that a court of this state assume jurisdiction because:

(a) The child and his parents, or the child and at least one litigant, have a significant connection with this state; and

(b) There is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships[.]

Section 452.480 requires a party pleading in a custody proceeding to inform the court as to the child's residence for the six months preceding the filing of the petition and to give other information regarding any previous custody proceedings.

Miller contends that Robinson's petition to modify did not allege, as required by § 452.450.1(2), that the court's exercise of jurisdiction was in Patrick's best interest; that Patrick and Robinson had a significant connection with Missouri; and that substantial evidence concerning Patrick's present or future care was available in Missouri. She argues that the court did not receive evidence on the jurisdictional issue and did not make a finding that the assumption of jurisdiction was in Patrick's best interest.

■ If the evidence establishes that the jurisdictional requirements of § 452.450 were met, the court's judgment must not be declared void. *See Higgins v. Karger,* 753 S.W.2d 622, 627 (Mo.App.1988). Schuyler County Circuit Court had entered prior modifications to the custody decree

even though Miller and Patrick had moved to Mississippi. "[W]here a custody decree is entered in Missouri, and the child and the parent move to another state, Missouri continues to have jurisdiction to hear subsequent custody and visitation matters, so long as one parent continues to reside in Missouri." *Newton v. Newton,* 811 S.W.2d 868, 869 (Mo.App.1991). Because Robinson and Patrick had significant connection to Missouri and because substantial evidence was available in Missouri concerning Patrick's present and future care, protection, training and personal relationships, we conclude that the Schuyler County Circuit Court had jurisdiction over this matter.[7]

We conclude that the trial court properly denied Miller's motions for relief from the judgment of January 18, 1991, and that the trial court had jurisdiction over the subject matter and parties on April 22, 1991, to modify the custody of Patrick.

All concur.

---

7. Moreover, four months after the April 22, 1991, modification, Miller asked a Mississippi court to modify custody. The Mississippi Court dismissed her complaint on the ground that Schuyler County Circuit Court, not it, had jurisdiction over the matter. According to § 452.-

450.1(4), jurisdiction may be established if another state declines to exercise jurisdiction on the ground that Missouri is the more appropriate forum to determine the custody of the child and it is in the child's best interest that Missouri assume jurisdiction.